## PENNSYLVANIA *v.* JOHN BELL.

*JOHN BELL* was indicted for the murder of *James Chalfant*, by ftriking him with a ftake on the head.

The prifoner and the deceafed, with feveral others, were at a *hufking frolick*, at the houfe of a neighbour, on the day laid in the indictment; and, as ufual in fuch cafes, drank freely. *Chalfant*, who was a joking, and, when he drank, a talkative man, frequently excited laughter at *Bell*, who was a man of weak mind, by alluding to fome previous tranfaction, the pulling of the cape off *Bell's* coat, in helping him on, or, as *Bell* thought, pulling him off a horfe when he was drunk. As often as *Chalfant* mentioned the cape of *Bell's* coat, *Bell* became, as it were, mad with paffion, wanted *Chalfant* to fight with him, provoked him to do fo, " or clear him of the law." *Chalfant*, who was a great deal ftouter than *Bell*, feemed to have no difpofition to fight, but only to make fport; and by his declining to fight, and by the interference of the company, *Bell's* paffion fubfided, and his good humour was reftored, till again provoked by *Chalfant's* mentioning the cape of his coat.— After fupper, while a woman of the company was finging a fong, *Chalfant* faid, that was juft like *Bell's* coat. *Bell* flew into a paffion, came to *Chalfant*, took him by the hand, faid, " Damn you, if you be a man, come out and fight me;" and feemed to draw him up from his feat. As *Chalfant* rofe to go out with *Bell*, a woman who had been fitting on his knee, faid, " You are not going to ftrike *Bell* furely." " No," faid he, " I would not for fifty pounds." As they came near the door, *Bell* ftepped out haftily before *Chalfant*, and, as *Chalfant* bent his head going out of the door, his head

and one foot being outfide, and one foot yet within,     1793.
*Bell* ftruck him with a ftake on his head: *Chalfant* fell.
*Bell* dropped the ftake and run off. They called after
him, to come back, he had killed the man, he anfwered,
" No, damn him, he is not dead yet, and if he be, he
cleared me of the law; and I will give as much to any
man, who takes his part." *Bell* was purfued, but he
efcaped and abfconded. He was apprehended fome time
after. The ftake had been taken from a fmall pen in
the yard. *Bell* fome time before he called out *Chalfant*,
had gone out to make water, and was near the place,
whence the ftake was taken. But, before and after
that, they feemed to be on good terms, and *Bell* did not
become angry again, till *Chalfant* again mentioned *the
cape of his coat.* The ftake was produced at the trial,
a ftout elm ftick, likely to kill. *Chalfant's* fcull was
broken, and he died foon after. There was evidence
given, that, feveral months before, in confequence of a
former provocation, *Bell* had faid, that he would knock
down *Chalfant* with the firft thing he laid his hands
upon. But there was alfo evidence of a reconciliation.
At the time the blow was given, an axe and a hoe were
lying in the yard.

    *Bradford*, for the Commonwealth, read the definiti- 4*Comm* 194 6
ons of murder and of malice, and ftated that the tefti- *Fofter* 256.
mony amounted to murder.

    *Brackenridge* and *Rofs*, argued for the defendant.
This is not murder: but, we admit, it is manflaughter.
The criterion is whether the killing has proceeded from
a heart regardlefs of focial duty, and fatally bent upon
mifchief. The boundaries between murder and man- *Fofter* 255-7.
flaughter are fcarce conceivable, and the diftinction,
according to circumftances, is nice; and judges differ
in opinion on the fame circumftances. Murder is a
deliberate premeditated killing. Manflaughter is a fud-
den killing, on provocation. There are many cafes, in
which it has been folemnly determined, that killing on
provocation, not greater than the provocation in this
cafe, amounts only to manflaughter. In the cafe of *Sted-* *Fofter* 292.
*man*, a foldier, who had given the firft provocation, and
killed a woman, as fhe fled from him, by ftabbing her
in the back with his fword, it was held clearly to be no
more than manflaughter. In the cafe of *Reafon* and 1*Str.* 499.

*Franter*, for killing a man, by both falling on him, and stabbing him in nine places, while he lay on the ground, begging for mercy, and unable to resist them; it was held and found to be but manslaughter, though the jury was disposed to hang them for the barbarity of the fact. In the case of *Taylor*, a soldier, for killing a man, by stabbing him with his sword; though *Taylor* had previously used words, which signified a disregard of social duty, and a disposition to kill, yet, by reason of the provocation, it was held to be but manslaughter.— While several persons were playing at bowls, two of them fell out, and quarrelled the one with another; and a third man of them, who had not any quarrel, in revenge of his friend, struck the other with a bowl, of which blow he died. This was held but manslaughter, because it happened on a sudden motion, in revenge of his friend. Two boys fighting together, one of them was scratched in the face, and run three quarters of a mile to his father, who went three quarters of a mile to where the other boy was, and killed him with a blow on the head. Yet, though this blow was given with a cudgel, to a boy, by a man, after going three quarters of a mile, and the provocation was not to himself, nor in his presence; on account of the provocation, it was held but manslaughter. If one jostle another, or whip the horse of another, and the other, on this provocation, kill him, it is but manslaughter. If a man, using provoking words to another, receives a blow from this other, and returns it, and is then killed by the other, it is but manslaughter. So if a man, provoked by insulting words, does not attack the insulter, till he has put himself on his guard, and then, in fighting with him, kill him, it is but manslaughter. In the case of *Oneby*, there was express malice. Here there is none. You will not presume it, from any thing that happened before. If two men, who have formerly fought on malice, are afterwards reconciled, and fight again, on a fresh quarrel, it will not be presumed, that they were moved by the old grudge, unless it appear by the whole circumstances of the fact.

We admit, that, if *Bell* had previously prepared this stake or cudgel, to beat *Chalfant*, as has been suggested, this case would have been murder. But this is not proved, and you will not presume it. When *Bell* went out, at the

1793.

time when it is suggested that he took the stake from the fence, he was reconciled to *Chalfant*. He did not, as, if he had retained malice, and provided the stake for an evil purpose, he would have done, quarrel with *Chalfant*, immediately after he came in ; but continued at peace with him, till *Chalfant* again provoked him. Where was the use of providing a stake, when an axe, a hoe, &c. were lying at the door ? The stake was not prepared before-hand, but suddenly offering itself to him, in the fury of his mind, he seised it, as a weapon, with which to combat against superior strength, and, in rage, not malice, with it killed *Chalfant*. Even in verdicts, courts will not supply a want of finding by the jury ; much less will juries, by presumption, supply a want of evidence. All your presumptions will be in favour of innocence. If, on special verdicts, when it has been doubted, whether the facts amounted to murder or to manslaughter, courts have given judgment only for manslaughter, much more will juries, when the case appears doubtful, acquit of murder, though they should be fined for it by judges. In the case of *Currie*, in this county, the jury acquitted him, contrary to the express opinion of the two judges of the Supreme court who tried him. The reason is, juries judge from their hearts, courts from their heads ; juries from their feelings, the unassisted dictates of nature, courts from an artificial system.

2 Sir. 1015.

Kel. 59 – 62.

Kel. 50.

2 Hale 159.

We say, then, this is but manslaughter. It is not a deliberate premeditated killing, but a sudden killing on provocation. Provocation by words excuses, unless there be a manifest intention to kill. Provocation by blows excuses, though there be an intention to kill. Words are sometimes a more severe provocation than blows. A man's feelings are according to the sensibility of his nerves, as well as the impressing force; and if a *furor* is raised, immaterial from what cause, this *furor* excuses.

It is evident, there was a *furor*, when this weak man so repeatedly offered to match himself in equal conduct against the strength of *Chalfant*. Yet *Chalfant* coolly and cruelly persisted in provoking him. When *Bell* lost all regard for his own life, and was ready, by combating with *Chalfant*, as it were, to run against a sword ; how can you suppose, that he should regard the life of *Chalfant* who provoked him. In the fury of his mind, the

1793.

ftake fell in his way, and under an apprehenfion of an attack from fuperior force, he feifed it, to refift and repel the approaching danger. If (faid Mr. *Brackenridge*) *Chalfant* himfelf, on the bed of death, could have looked back on the tranfaction, confcious of his being the caufe, he would have excufed the prifoner, and, to have mercy himfelf with God, he would have called for mercy to *Bell*. If his fpirit were in this jury-box, and I were pleading this caufe to that fpirit, it would fay acquit him.

PRESIDENT. Society is inftituted for mutual protection. It is true, that taking away the life of a murderer makes no compenfation, but its example acts by way of terror, to preferve the lives of others. In all, or almoft all nations, blood has been demanded for blood.

The laws muft operate by certain rules, not the cafual feelings of jurors; and jurors muft judge of the facts, according to the certain rules of law. For miferable would be our fituation, if our lives depended not on fixed rules, but on the feelings, which might happen to be excited in the jurors who were to try us. If, in the cafe of one man, compaffion pervert the conftruction of the law, to acquit; in the cafe of another, refentment may pervert it, to condemn: and whenever guilt may thus efcape from punifhment; innocence may be no longer a fhield. I therefore know no argument lefs proper or more dangerous, or to which juries ought to liften with greater fufpicion and averfion, than that which muft derive its force from confounding the authority of a court and a jury, inftilling into the one a prejudice againft the opinion of the other, and perfuading jurors that they are at liberty to apply to facts a rule of their own, different from that which the law applies. The court is the mouth of the law. Whether the facts are fo, or fo, it lies with you to determine, according as you believe the teftimony. Suppofing them fo or fo; whether they amount to murder or manflaughter, is a queftion of law, for the court to determine. You may find, according as you believe or difbelieve the facts, and comparing the facts with the rules of law, that the prifoner is guilty, or not guilty, or guilty of manflaughter; or you may find the facts fpecially, without drawing any conclufion of guilt or innocence; leaving it to the court, to pronounce the conftruction

which the law puts on the facts found ; but you cannot, but at the peril of violation of duty, believing the facts, say that they are not what the law declares them to be: for this would be taking upon you, to make the law, which is, the province of the legiſlature ; or to conſtrue the law, which is the province of the court.

1793.

All killing is not murder ; but if there be an unlawful killing, the law will preſume it to be murder, unleſs the killer can ſhew, that it is not.

Murder is killing with malice. Any formed deſign of miſchief may be called malice. Malice is a deliberate, wicked vindictive temper, regardleſs of ſocial duty, and bent on miſchief. This may be collected from previous circumſtances, or circumſtances attending the manner or fact of the killing. There may be malice, in its legal ſenſe, when there is no actual intention of any miſchief, but the killing is the natural conſequence of a careleſs action, as riding a horſe, or driving a carriage, through a crowd. Manſlaughter is a ſudden unlawful killing, without the circumſtances of malice, cruelty, revenge, &c. involved in the technical word *malice*.

1 *Hawk.* 121-2. *Foſter* 256 —7. 2 *L. Ray* 1487.

1 *Hawk.* 113, 130. 1 *Hale* 476. *Foſter* 262-3.

Madneſs excuſes from puniſhment of every kind, for any crime whatſoever. Anger, a ſhort madneſs, when provoked by a reaſonable cauſe, excuſes from the puniſhment of murder.

You will not preſume, that a killing exiſted, unleſs it be proved. But if a killing has been proved, you muſt preſume, for the law preſumes, malice, unleſs the killer ſhew, that he did it in a paſſion reaſonably provoked. Whether paſſion or provocation, the priſoner muſt prove, they are never preſumed, but malice, the contrary of them is preſumed ; and if he prove them not, you will preſume malice, not any particular fact, or circumſtance of malice, but malice in general. Nor is this preſuming againſt innocence : for the killing being proved, a thing wicked in itſelf, it becomes neceſſary for the killer to ſhew a juſtification or excuſe for it. Man is a free agent ; and if he do an act evil in itſelf, it will be preſumed to ariſe from an evil intention, till the contrary appear : for a man muſt be preſumed to intend what he accompliſhes.

2 *Hale* 60, 157-9. 1 *Hawk.* 124. *Kel.* 112. 2 *L. Ray* 1493-4.

Caſes of ſpecial verdicts are not applicable to this.—

*M*

Courts cannot decide facts, and, if juries do not find them, courts cannot presume them. But courts will presume malice from facts in the manner of killing: for that is a construction of law.

To exclude the presumption of malice, and, of course, to reduce the killing below the degree of murder, on the ground of passion, there must be both passion and provocation. Passion without provocation, or provocation without passion, is not sufficient. There must not only be both passion and provocation, but the provocation must be sufficient. For it is not to be supposed, that a rational man will, without reasonable provocation, suffer himself to be so far transported by passion, as to take away life; and it would be difficult to distinguish between a real passion, and a passion affected as a cloak for malice, if the law indulged passion without reasonable provocation.

*Deliberate* killing, without *passion*, whatever may have been the *provocation*, is murder. For, if the killer was cool, and master of his passion, and had the full exercise of his judgment, the principle of responsibility thus remaining, he must suffer the full effect of his conduct.

What is reasonable or sufficient provocation is a fixed question of law, not variable, according to the degree of judgment or irritability of the killer. This, being of a nature not easily, if at all, to be ascertained, would be too precarious a standard to appeal to. And the law proceeds on the surer ground of established rules.

An attack, though slight, on the person, or a violation of the bed of another, from the high value, which the law sets on these objects, is a sufficient provocation, to extenuate a sudden killing in the heat of passion, and make it no more than manslaughter. It would be so, also, I think, if the personal attack were only menaced, but immediately approaching, and if under the terror, and in defence of that, an homicide were committed: for it has even been said, though this seems laying it down much too loosely, that words of *menace* of bodily harm would come within the reason of such provocation, as would make the offence but manslaughter. An attack on the person and safety of a friend is a provocation sufficient to extenuate to manslaughter a sudden killing, in the

peril and defence of this friend. If a master, provoked by negligence or improper conduct of a servant; or if one man, provoked by contumelious or reproachful words or gestures of another; proceed to chastise the offender, with a weapon, and in a manner proper for chastisement, and not likely to kill; and an accidental killing of the offender ensues; the provocation is sufficient to make this killing but manslaughter. So, if, in such moderate and reasonable chastising, blows are exchanged, or if, on such affront, the parties proceed to combat, on equal terms, and he who gives the first blow kills the other in the encounter, there being no original malice in the killer, it is but manslaughter. But, farther than this, the law does not excuse; for if, on any slight provocation of words or gestures of contumely or insult, the passion of the insulted person shew itself in circumstances of unusual cruelty, transport beyond the just measure of correction, and revenge itself with a weapon, or in a manner, likely to kill, and do kill the person provoking him, it is murder. For it is settled, that no words or gestures, however contumelious, are a sufficient provocation, to extenuate such a killing, and make it only manslaughter. The law has never set so low a value on the life of man, as to say, that words are such a provocation, as, if the offended person strike with a weapon, or in a manner, likely to kill, and do kill, it will be but manslaughter. Such killing has always been held murder. For the law will not suffer, with impunity, a man to become so angry, for mere words or gestures of contumely, as, in his rage, to kill a man. It is a fixed principle, that, if from the weapon, or the manner of striking, an intention to kill may or must be collected, provocation by words only is not sufficient to make the killing but manslaughter: malice, a design of mischief, will be presumed, and the killing will be murder. I consider this as an established boundary, which the law sets to human passion; and I hold it dangerous to remove it. There would be no freedom of censure or irony, if you must, at the peril of your life, first measure the degree of another's patience. The law then says, while you touch not the person of another, death shall avenge the taking away of your life. When

1793.

*Foster* 295.
*Kel.* 64-5.
1 *L. Ray.* 144.
1 *Haw.* 124-5
1 *Hale* 454 6.
*Kel.* 129-30.1

*Foster* 295.
*Cro. El.* 778.
*L. Ray.* 144.
1 *Hale* 455.
1 *Hawk.* 124

4 *Com. Di.* 15
*Com. Rep.* 15.
*Kel.* 131. 55.
60, 65.

5 *Burr.* 2796
1 *Hale* 455.

*M* 2

1793.

you affault the perfon of another, you fhall rifk your own. Abftain from violence, and the law guards you. If you employ violence, you muft hazard its being employed againft you. I confider this as proper to preferve peace and fafety, and to put the weak in a ftate of defence and equality with the ftrong.

Such is the law, and confiftent with thefe principles are all the cafes.

*Kel.* 131.

There is a cafe, which, at firft fight, might feem to contradict this. *Williams*, a *Welchman*, on *St. David's* day, having a leek in his hat, a certain perfon pointed to a *Jack* of *Lent*, that hung up hard by, and faid to him, look on your countryman ; at which *Williams* was much enraged, and took a hammer, that lay on a ftall hard by, and flung at him, but miffing him, it hit another, and killed him. It was held, that he was guilty

— 132.

of manflaughter. But lord *Holt* obferves, when he cites this cafe in *Mawgridge's* cafe, that the indictment being only for manflaughter, he could not, on it, be found guilty of murder : " but," adds he, " if the indictment had been for murder, I do think, that the *Welchman* ought to have been convicted thereof ; for the provocation did not amount to that degree, to excite him defignedly to deftroy the perfon who gave it to him."

12 *Co.* 87.

In the cafe of the killing at the bowls, it was while the deceafed was fighting with the friend of the killer : his friend was attacked and in danger. In *Rowley's* cafe,

*Cro. Ja.* 296.

the killing is exprefsly faid, by *Croke*, to have been occafioned by a *fmall* cudgel ; and thus, though death accidentally enfued, the chaftifement may not have exceeded the natural meafure, from the *angry* father of a

*Fofter* 292.

bleeding fon. In *Stedman's* cafe, the woman had ftruck the foldier, in the face, with a patten, and drew a good deal of blood. This was held to be fufficient provoca-

1 *Str.* 499.

tion. In *Reafon* and *Franter's* cafe, there was ground to believe, that there was an attempt to refcue. The

*Fofter* 291-4.

deceafed had brought down his piftols, and gave the firft blow, accompanied with menaces to the officers. A piftol was heard to go off ; both his piftols were difcharged in the affray ; and his fword was found drawn and broken. *Reafon* and *Franter* were both wounded,

5 *Burr,* 2795.

and one of them with a piftol fhot. In the cafe of *Taylor*, he was provoked by opprobrious words. The firft blow

which he gave, on this provocation, was with a small
rattan cane, not bigger than a man's little finger. And
it was not, till after he had been collared, thrown down
againſt a ſettle, ſhoved out of the room, and violently
puſhed out of the door, that he gave the wound with
the ſword. In *Mawgridge's* caſe, and in *Oneby's* caſe,
the words of provocation came firſt from the perſons
killing, the firſt blows were given by them, and that
being done in a manner that ſhewed malice, the killing,
though after they had received wounds from the perſons
whom they attacked, was held to be murder.

In the caſe before us, two things are well conceded ;
—1. That the killing of *Chalfant* by *Bell* is, at the leaſt,
manſlaughter ;—2. That, if the cudgel or ſtake was
previouſly prepared, it is murder. It is not doubted
the killing was by the priſoner, and with the cudgel or
ſtake, which has been produced before you. Nor is it
denied, that if it were poſſible to preſume, that the kil-
ling was on the old grudge, it would be murder.—
But it is ſaid this cannot be preſumed.

Though the court will not preſume this, unleſs the
jury find it ; yet, if the circumſtances of the caſe, lead
ſtrongly enough to this preſumption, the jury may find
ſo. The circumſtances of this caſe do not ſeem to lead
ſtrongly to this preſumption. I alſo think the proof of
previouſly preparing the ſtake is very light. You will
however weigh thoſe things, taking into view alſo the
facility with which he could have ſeiſed the other wea-
pons, the axe, &c. and the manner and purpoſe of apply-
ing either.

But I put it on this point. No provocation, but
words, has been proved. And the law does not conſider
words as ſuch a provocation, as can excite a paſſion, in
which, if a man ſtrike another, with a weapon likely to
kill, and thereby kill, the offence will be extenuated
to manſlaughter. When the provocation is only by
words, ſuch killing, notwithſtanding the paſſion, is mur-
der. This appears to have been ſuch a killing. The
ſtroke was given with a weapon likely to kill, inſidi-
ouſly, before the deceaſed was on his guard ; and the kil-
ling is murder.

The jury found him guilty of murder.

*M 3*

*1793.*

*Kel.* 119.
*L. Ray.* 1485.
*Sir.* 766.

1 *Hawk.* 124.

1 *Hale* 452.
*Cro. Ja.* 295.

On *Saturday*, 28th *December*, 1793, *Brackenridge* and *Rofs*, moved in arreft of judgment, on the following grounds :—

*Art. v. § 5.* The prefent conftitution, of this ftate, for the firft time, gave authority in capital offences, to the judges of the county courts, the prefident being one. The conftitution is in the nature of a commiffion, and rendering the prefence of the prefident neceffary, it ought to be fhewn, that he was prefent. The caption of this indictment does not fet forth this. Its caption is only, "at a court of Oyer and Terminer and Gaol Delivery, for the county of *Wafhington*," does not fay before whom, nor that the prefident was one. It does not fay, that the town of *Wafhington* is in the county of *Wafhington*. The court is not to go on their own knowledge. The record itfelf muft fhew to all pofterity, and when memory is gone, that this proceeding was regular. In the *Fofter 1, 7.* cafe of the fpecial commiffion, for the trial of the perfons concerned in the rebellion of 1745, the proceedings were very minutely attended to, and the defects pointed out in this, did not exift in the indictments before that court.

*4 Hawk. 359.* The caption of an indictment muft fet out the court, the jurors, &c. that the authority may appear.

This indictment concludes "againft the act of Affembly." There is no act of affembly againft murder.

The offence is not laid with fufficient certainty and confiftency. It is ftated, *that of this mortal wound Chalfant, from the faid 14th day of November did languifh, and languifhing did live, and on which faid 14th day of November, of the faid mortal wound, died.*

Thefe objections may be thought nice, and they touch not the merits. But the prifoner's life is at ftake. And, in fuch cafe, the niceft objections will have weight.

*Bradford*, for the ftate. Suppofe the prefident and other judges had been named, ftill ftrangers and pofterity could not know, that thefe were commiffioned, or that the governor, who commiffioned them, was governor. The abfurdity is glaring. Could I know, beforehand, what affociate judges would attend? The conftitution declares, that there cannot be a court of Oyer and Terminer without the prefident. The caption of this indictment is, at a court of Oyer and Terminer, Therefore the prefident muft have been prefent.

The indictment concludes also " against the peace and dignity of the commonwealth of Pennsylvania.— The words *against the form of the act of assembly* may be rejected as surplusage.

1793.

The court adjourned to 6*th January*, 1794, when their opinion was delivered.

PRESIDENT. *John Bell* having been committed to the gaol of this county, on a charge of killing *James Chalfant*, a precept was issued on 21st *November*, 1793, by me, as president of the court of Common Pleas of this county, and *James Edgar*, and *Matthew Ritchie*, judges of the said court, and justices, the president being one, of Oyer and Terminer and Gaol Delivery, within this county, directing the sheriff, to have the prisoners in the said gaol, and a competent grand jury, and traverse jury, of the said county, for their trial before us, or any two of us, the president being one, at the court house in the town of *Washington* on the 23d day of *December* then next following.

*Foster* 1—7.

On the 23d *December*, the above named president and judges, and the two other judges, met at the court house, and a court of Oyer and Terminer and Gaol Delivery for the county of *Washington* was held. The sheriff returned the above precept, with a pannel of twenty-four grand jurors, as he had been directed. Of these seventeen appeared, and (*Isaac Leet* being foreman) were sworn as the grand jury for those courts.

To this grand jury a bill was sent up in the following words ;

"*Washington County*, ss. } At a court of Oyer and Terminer and general Gaol Delivery for the county of *Washington*, held, in the town of *Washington*, on the twenty-third day of *December*, in the year of our Lord, one thousand seven hundred and ninety-three. The grand inquest that now is for the body of the county of *Washington*, upon their solemn oath and affirmation, respectively, do present, that *John Bell* late of the county of *Washington*, yeoman, not having the fear of God before his eyes, but being moved and seduced by the instigation of the Devil, on the fourteenth day of *November*, in the year of our Lord, one thousand seven hundred and ninety-three, with force and

*M* 4

arms, at the county of *Washington* aforesaid, in and upon one *James Chalfant*, in the peace of God, and the commonwealth of *Pennsylvania*, then and there being, feloniously, wilfully, and of his malice aforethought, did make an assault; and that the said *John Bell* with a wooden stake, in length four feet, and in thickness three inches in diameter, which he the said *John Bell* in both hands then and there had and held, the said *James Chalfant* then and there feloniously, wilfully, and of his malice aforethought, did strike, giving to the said *James Chalfant* then and there, with the stake aforesaid, in and upon the left side of the head of the said *James Chalfant*, one mortal wound of the breadth of three inches, and the depth of two inches, *of which mortal wound aforesaid the said James Chalfant, from the said fourteenth day of November, in the year aforesaid, at the county aforesaid, did languish, and languishing did live*, on which said fourteenth day of *November*, in the year aforesaid, the said *James Chalfant*, at the county of *Washington* aforesaid, of the said mortal wound died. And so the jurors aforesaid, upon their oath aforesaid, do say, that the said *John Bell*, in the manner and form aforesaid, feloniously, wilfully, and of his malice aforethought, did kill and murder the said *James Chalfant against the act of assembly, in such case made and provided*, and against the peace and dignity of the commonwealth of *Pennsylvania*, &c.—*Jared Ingersoll*, attorney general."

This bill the grand jury indorsed, " A true bill," with the name of the foreman subscribed to the indorsement; and so returned it.

Being arraigned on this indictment, *John Bell*, pleaded, that he was not guilty. The attorney for the state joined issue. The issue was tried, in the same court by a traverse jury duly returned by the sheriff, on the above precept: and this traverse jury found, that *John Bell* is guilty, in manner and form, as he was indicted.

Being demanded, at the same court, what he had to say, why judgment should not be passed on the finding of the jury, his counsel urged, in arrest of judgment, the following objections to the indictment.

That the caption of this indictment is defective and erroneous, not stating the judges before whom it was

*2 Hard.* 359, *&c.*
*Foster,* 1, *&c.*
*Const. v.* 5.

taken, nor that the prefident was one, nor that the town of *Wafhington, in* which the court was held, is within the county of *Wafhington, for* which the court was held, and the jury fummoned.

That the body of this indictment is uncertain, repugnant, and void, alledging the affault and the ftroke, on the 14th day of *November*, and ftating, that, *from* the faid 14th day of *November*, *Chalfant* languifhed and lived, and that *on* the faid 14th day of *November* he died. If he languifhed and lived *from* the 14th day of *November*, he muft have been alive after that day, and yet the indictment ftates him to have died on it. This is confidered as a repugnancy which makes it erroneous.

That the conclufion of this indictment is alfo erroneous, ftating the murder to be *againft the act of affembly in fuch cafe made and provided*, when there is no act of affembly againft murder.

For thefe reafons, the counfel for *John Bell* have moved, that judgment on this indictment and verdict be arrefted ; and this, it is faid, will occafion no failure of juftice, as he may again be tried on another and fufficient indictment.

In difcuffing thefe reafons, I fhall invert the order of them, and beginning with the laft, proceed backwards to the firft, on which the chief ftrefs feemed to be laid.

But let me premife, that, although courts have ufually, in all capital cafes, given way to very nice objections, it appears to me, that this inclination ought rather to be reftrained than extended. I cannot but believe, that yielding to frivolous or formal objections, no way affecting the innocence or defence of an accufed perfon, feems better calculated to reduce the law to a game of addrefs, than to promote juftice. And I am led to wifh, that all exceptions to the form of the previous proceedings fhould be made before a trial of the merits, and that a defence on the merits fhould be confidered as an admiffion of previous regularity, againft which no objections fhould be afterwards received.

Two great men, at the difference of a century from each other, feem to have felt the fame impreffions ; and if they were not led to the fame conclufion, which I have ftated, they have, at leaft, expreffed themfelves in ftronger terms.

1793.        Lord *Hale*, whose disposition of tempering justice with mercy will not be disputed, thus delivers his opinion. " In favour of life, great strictnesses have been, in all times, required, in points of indictments ; and the truth is, that it is grown to be a blemish and inconvenience in the law, and the administration thereof. More offenders escape, by the over-easy ear given to exceptions in indictments, than by their own innocence ; and, many times, gross murders, burglaries, robberies, and other heinous and crying offences, escape by these unseemly niceties, to the reproach of the law, to the shame of government, and to the dishonour of God. And it were very fit, that, by some law, this overgrown curiosity and nicety were reformed, which is now become the disease of the law, and will, I fear, in time grow mortal, without some timely remedy."

Lord *Mansfield*, from whose notice few corruptions escaped, expresses, more obliquely, similar sentiments, and points out their true limits.   " *Tenderness* ought always to prevail, in *criminal* cases, so far at least, as to take care, that a man may not suffer *otherwise than by due course of law* ; nor have any hardship done him, or severity exercised upon him, where the construction may admit of a reasonable doubt or difficulty.  But tenderness does not require such a construction of words (perhaps not absolutely clear and express) as would tend to render the law nugatory and ineffectual, and destroy or evade the very end and intention of it : nor does it require of us, that we should give into such nice and strained critical objections, as are contrary to the true meaning and spirit of it."

These sentiments appear rational and solid, and seem to lead strongly to the conclusion, which I have stated. But whatever my opinion or inclination may be, as to the state to which the law ought to be brought, if there be in it any fixed principle, which will render all, or any of these objections fatal to this indictment, it must fall : for, surely, a man's life ought not to depend on unpublished, or unwarranted opinions, but on settled and acknowledged rules.

With these impressions, I proceed to examine the preceding reasons in arrest of judgment.

1. It is urged, that the conclusion of this indictment,

2 Hale P. C. 193.

4 Burr. 2082.

alledging the offence to be *against the act of assembly in such case made and provided*, when there is no act of assembly prohibiting it, is erroneous, and vitiates the whole. 1793.

How these words came to be introduced into this indictment, I do not know: I see no use for them. But what harm they can do, more than any other superfluous words, I am equally at a loss to explain. Strike them out, and the conclusion of this indictment is good. If it be good without them, they are within the rule, that surplusage words do not vitiate. *Co.Lit.*303 *b*.

So would I say, on principle, were there no precedents to warrant me. But, however it may have been doubted, or doubtfully spoken of, I think it settled, that an indictment for an offence at common law is not vitiated by a conclusion against the form of the statute; for, if an offence at common law is prohibited by statute, this takes not away the indictment at common law. The statute is cumulative; and if an indictment for such offence conclude against the statute, though the offence be not made out against the statute, judgment may be given at common law. Is there any reason, why the rule should not be the same, when there is no statute against the offence, as when there is no offence against the statute? Murder is an offence at common law, and rejecting the words " *against the form of the act of assembly, in such case made and provided*," the conclusion of this indictment, as an indictment at common law, is right. *2 Hawk.*356. *2 L. Ray.* 1104, 1163. *Salk* 376. *Doug.* 441-5. *1 T. Rep.*121. *1 Ventr.* 103, *Salk* 212.

2. The second objection to this indictment is, that it alledges the offence uncertainly and repugnantly, and is therefore erroneous: for, *in legal terms*, it says, that *James Chalfant* was alive, after the 14th day of *November*, and says also, that he died on the same 14th day of *November*,

Both these allegations cannot be true. And it is laid down as a rule, that, where one material part of an indictment is repugnant to another, the whole is void; for the law will not admit such nonsense and absurdities in legal proceedings, which, if suffered, would soon introduce barbarism and confusion. *2 Hawk.*325. *Cro. El.* 196.

Now, in an indictment for murder, it is material to alledge both the day of the stroke, and the day of the *2 Hawk.*263.

death; that it may appear that the death was within the year and day after the ftroke; for, beyond that time, the law prefumes not the ftroke to be the caufe of the death. The allegation of both being therefore necef-fary, if either be alledged on an impoffible day, as the 31ft of *June*, or if the murder be alledged to have been on a day different from the day on which the death is alledged to have been, though on the day on which the ftroke was given, as if the jury find the ftroke given on-the 1ft, and the death on the 10th of *June*, and fo conclude that he murdered him on the 1ft of *June*, when it appears from the indictment, that he was alive: this is repugnant and void: for though the ftroke in fact killed him, yet, till the death, it was but a trefpafs, and is not to be made a felony by relation.

Whether this indictment lays the death on a day, *on* and *after* which *Chalfant* is fhewn by the fame indict-ment, to have been alive, and whether, therefore, the indictment be repugnant and void, depends on the con-ftruction to be put on the words " *from the faid 14th day of November languifhing did live*," and on their importance in this indictment. In fiction of law, there are no parts of a day, yet the fact is otherwife, and, wherever it is material or proper, may be averred. Thus it might have been ftated here, that the ftroke was given at one of the clock, on the 14th day of *November*, and that of that ftroke *Chalfant* languifhed, and languifhing did live, till fix of the clock on the fame day, and, at fix of the clock on the fame day, he died of it.

Before it can be admitted, that this indictment fhews, that *Chalfant* was alive after the 14th day of *November*, it muft be eftablifhed, that *from* the day of the ftroke, is *exclufive* of the day of the ftroke; or, in other words, muft mean fometime *after* it. If this be its neceffary meaning, and the averment, that, after the ftroke, he lived languifhing, be a material part of the indictment, the principles already laid down muft deftroy it.

But, though *from* the day may be properly or ufually, and was long confidered as certainly equivalent to *im-mediately after*, it feems now, according to the fubject, to admit of a different conftruction, and fometimes to *include*, fometimes to *exclude* the day mentioned.

Thefe words exprefs their meaning very awkwardly,

1 *Bolftr.* 203.
*Hughes' abr.*
1084, 1094.
*Cro. El.* 738,
739, 196.
4 *Co.* 41·2.

3 *Burr.* 1434.
1 *T. Rep.* 116-8.

*Co. Lit.* 46·b.
1 *Wils.* 176.
2 *Wils.* 168.
*Cowp.* 714·

1793.

but ftill not doubtfully. The whole taken together is, that *Chalfant* lived fometime after the ftroke, but died on the day on which it was given.

But are they a material part of this indictment? I think not; and I think them as ufelefs as they are awkward. It is material to aver, that the ftroke was given on a certain day; it is material to aver, that, on a certain day, the perfon ftricken died of this ftroke; but what paffed between the ftroke and the death, it is not material to aver: The averment of the ftroke, of the death, and of the time of each, fhewing the death to be within the year and day after the ftroke, with the averment that the ftroke occafioned the death, completely afcertains the homicide, and whether the death was inftant, or the party lived, languifhing or otherwife, after the ftroke, is no material part of the indictment; a repugnancy in it will not vitiate an indictment otherwife good; and it may be ftruck out, without, in the leaft, altering the nature of the accufation.

*1 Hawk.* 119.
*1 Hale* 428.
*Rew's cafe,*
*Kel.* 26.

If it be ftruck out, the indictment will ftate, " *that John Bell, on the 14th day of November, 1793, with force and arms, at the county of Wafhington, in and upon James Chalfant, felonioufly, wilfully, and of his malice aforethought, did make an affault, and with a wooden ftake, which he then held in his hands, did, felonioufly, wilfully, and of his malice aforethought, ftrike the faid James Chalfant; giving to the faid James Chalfant, then and there, with the ftake aforefaid, in and upon the left fide of the head of the faid James Chalfant, one mortal wound of the breadth of three inches, and the depth of two inches, on which faid 14th day of November, in the year aforefaid, the faid James Chalfant, at the county of Wafhington aforefaid, of the faid mortal wound died.*"

This is a fufficient allegation of murder; and, though not fo elegant, is as precife and intelligible, as any fentence of a *Robertfon*, a *Gibbon*, or a *Junius*: and an indictment will no more be quafhed, for inelegant *Englifh*, than for falfe *Latin*.

*Cro. El.* 108.
5 *Co.* 122.

On thefe grounds, therefore, I am not at liberty to fay, that judgment on this verdict fhall be arrefted; and I proceed to examine the only remaining reafon urged, and chiefly relied on, for this purpofe.

3. It is objected to the caption of this indictment,

1793.       that it states not the judges, before whom it was taken,
and so it appears not, that they had authority; for, with-
out the president, no court for the trial of murder could
be held, by the other judges of the court of Common
Pleas ; and that it states not that the town of *Washing-
ton* is *in* the county of *Washington,* for which the court
was held, and in which the offence was committed.

To this it has been answered, that this is requiring too
much ; for it could not be previously known, what judges
would attend, and it might be farther required, to prove
that they were judges, and that the governor who com-
missioned them, was the governor. It has been farther
and better answered, that the caption states the indict-
ment to have been taken, at a court of Oyer and Ter-
miner and Gaol Delivery, for the county of *Washington,*
held in the town of *Washington,* and it must be presumed,
from the provision of the constitution, to have been held
before the president and a competent number of judges,
of the court of Common Pleas of that county, or before
some other judges, forming a competent court of that
description, and to have been held within the county, for
which it was held.

*Hale* 185-6.   Many averments are necessary or proper in an indict-
3 *Bac.* 105-7.   ment for murder, which yet need not be proved with
precision. The time of the stroke, and of the death, the
weapon used, and how, and in what part of the body,
the stroke was given, and the dimensions of the wound,
are all necessary or proper to be averred ; but if it come
out in proof, that the time of the stroke, and of the death,
was different, or that the stroke was with another wea-
pon, or in another manner, or on another part of the
body, or that the wound was of other dimensions; the na-
ture of the offence is not thereby materially altered, a
sufficient charge of murder is made in the indictment,
and if sufficient, though in circumstances different, evi-
dence of murder be given at the trial, the murderer will
be convicted by the jury, and judgment, on this convic-
tion, will be given by the court.

If the judges must be named in the caption of an in-
dictment, and, in order to name them there, it were ne-
cessary to know them before the court, there are two
plain rules, without any aid from divination, for naming
them safely. Those may be named, who signed the pre-

cept, or all in commiffion may be named. And if the 1793.
prefident and any one other who figned the precept at-
tend, it is fufficient. It is not *proof*, but *averment*, that 2 *Hale* 167.
is looked for in an indictment. The proof comes af-
terwards. If indeed it appear, on examination, that he,
who is ftated as prefident, is not prefident, as having
no commiffion, or a commiffion from one who was not
governor. The whole proceeding is void.

But to meet the objections directly. It cannot be
denied, doubted, or diffembled, that indictments have
been quafhed in *England*, for reafons, at leaft, as light,
as thofe urged againft this indictment. An indictment *Rex v Brown*
was quafhed, becaufe the grand jury called it an *indict-* 1 *L. Ray* 592.
*ment*, before it was found a *true bill*. *Salk.* 376.

It is laid down as a general rule, that every caption 2 *Hawk.* 358-
of an indictment is erroneous, which fets not forth, 61, *Cro. El.*
with proper certainty, the court, in which, the jurors, 24. *Yelv.* 46.
by whom, and the time and place, at which, the indict-
ment was found. The caption of an indictment taken
at the feffions muft mention before what juftices it was
taken, and fet forth the nature of their commiffion, or it
is erroneous, and will be quafhed; as not fufficiently
fhewing a competent jurifdiction.

Indictments have been quafhed for not naming the 2 *Hawk.* 361.
jurors, who found them, or ftating that they were twelve 2 *Hale* 167.
in number, or of the county, or precinct, or that they *Cro. El.* 654.
were honeft and lawful men, or, that they enquired *vid. Cro. Ja.* 41.
upon oath.

Indictments have been quafhed, becaufe the caption 2 *Hawk* 362.
fet forth no place where taken, or fhewed not with fuf- *Cro. El.* 137.
ficient certainty, that the place fet forth is within the 276. 2 *Hale*
jurifdiction of the court, as at a feffions of the peace 166.
holden for fuch a county at *B.* without fhewing in what
county *B.* is, otherwife than by putting the county in
the margin.

If this indictment muft be examined on thefe princi-
ples, it cannot ftand.

But againft thefe principles, it may be ftated, that
this indictment appears from the caption to be taken at
a court of Oyer and Terminer, and general Gaol Deli-
very, and it may be afked whether this, by implication,
does not fufficiently ftate, that it is taken at a court *Confl. Penn.*
having authority to take and try indictments for murder. v. 4.

1793. Where the caption of an indictment is at a *general sessions* of the peace, it is not necessary to stile any of the justices *of the quorum,* for that is sufficiently shewn, by shewing that the sessions was a general sessions, which could not be held without some of the *quorum. A fortiori,* shall this be presumed in a court of Oyer and Terminer, &c. a court of higher nature than the sessions of the peace, and scanned by rules less nice.

2 *Hawk.* 360.
3 *Mod.* 152.
2 *Hale* 167.

On an indictment tried at a court of Oyer and Terminer, &c. and removed into the King's Bench, objections, not unlike the present, were there taken and over-ruled; and sentence of death was passed on the defendant. On the authority of this case, the editor of the new edition of *Comyns' Digest,* states, that it is not necessary, that the record should set forth the commission of gaol delivery, or mention the judges' name, or say he was *of the quorum.* If it say the king's justices, it is enough.

*Rex v. Boyce*
4 *Burr.* 2073
-84-6.

3 *Com. Dig.*
534.

I shall not here enquire into the authority of justices of the peace in quarter sessions, to take indictments. This case is at a court of Oyer and Terminer, &c. and, besides, my opinion is formed upon other principles.

4 *Com. Dig.*
59.

In all cases of indictments, quashed for reasons such as I have stated, and such as are urged against this indictment, they have, so far as I have been able to discover, been indictments removed out of an *inferior* court into the King's Bench. The judges of the court of King's Bench could know nothing more of the proceedings, than what they could discover on the face of the record sent up, and if, there, they cannot find, or necessarily presume competent jurisdiction and regularity, they have nothing else to which they may resort for further information; and, competent jurisdiction and regularity failing to appear, the indictment must be quashed. And, in the court of King's Bench, it seems to be a principle, by which they are governed in their examination of the proceedings of inferior courts, that, if such proceedings, in setting forth the stile of the inferior court, do not shew their authority, whether by charter, or prescription, and do not shew the names of the judges of such court, they are erroneous: for all jurisdiction rests in the crown, and, therefore, the king's court ought to be informed how the authority is derived; and, with-

1 *L. Ray.* 710
-1.

*Yelv.* 46. *Cro. El.* 489. *Cro. Ja.* 184.
2 *Com. Dig.*
610.

out an exprefs ftatement of the names and authority of the judges in the inferior court, the king's court cannot recognize them.

1793.

There is another principle, which feems to have governed decifions in the court of King's Bench, on indictments taken at feffions of the peace. They have confidered the authority of juftices of the peace as, of two kinds ; that, by one, they acted as mere confervators of the peace ; by the other, they were empowered to hear and determine offences : the firft made them guardians, the laft made them judges ; but their name *juftices* did not imply both ; and, therefore indictments taken before them as juftices, without the addition of their authority of trying as judges, were holden to be bad. This will not be wondered at, when writs of *certiorari*, to remove indictments taken before them as juftices, have been holden to be bad.

2 *Hawk.* 58-
-9, 359-60.
2 *Hale* 43·4,
166. *Rex v.*
*Carter,*
1 *Str.* 442.

2 *Hawk.* 58,
-9.

Thefe principles feem to furnifh an explanation of all doubts refpecting this indictment. The indictments, which were quafhed in the King's Bench in *England,* were quafhed, not becaufe they were *not* properly taken, but becaufe that court could *not fee,* that they *were* properly taken. Their principles prevented them from looking beyond the paper fent up to them, and *it* did not fhew *all* the truth.

But do we ftand in this fituation ? I am called on to doubt whether I was prefent at a court, at which I know, that I was prefent. The other judges are called on to doubt, whether any of them were prefent at a court, at which each of them knows, that all were prefent ; and both they and I are called on to doubt, whether this court houfe, where we now fit, be within the county of *Wafhington.* To the common underftanding of mankind, fuch doubts muft appear very chimerical and abfurd.

But, to reft on the record only, and not look beyond it, but proceed technically ; muft we not take the whole of the record together ? Or muft or can we, when objections are made to a part, wink fo hard, as not to fee, or abfolutely fhut our eyes to the reft, which would clearly explain, and fully anfwer thefe objections ? It is impoffible, that we fhould be compelled to look only to fee errors, and fhut our eyes againft the cure of thofe

N

1793.

errors, when both error and cure appear on the *whole* of the proceedings. In examining this indictment, therefore, we muft, together with the indictment, take into view, the precept iffued for holding this court, the return of jurors made by the fheriff to this court, the minutes taken, by the clerk, of the feffions and proceedings of this court, the names of the grand jury fworn to prefent, and the traverfe jury fworn to try, this bill of indictment. Thefe general records are part of each particular record, and will be annexed to each, as occafion requires. Annexing them, therefore, to the record of this indictment, it will appear, that it was taken at a court of Oyer and Terminer and general Gaol Delivery, held by Alexander Addifon, prefident, and his affociates, juftices, affigned to hear and determine all offences within this county, and deliver the gaol of this county of all prifoners ; that it was found on the prefentment of *Ifaac Leet* foreman, and fixteen other grand jurors particularly named, duly returned and fworn for that purpofe. The only thing wanting, to anfwer all the objections, is that it does not appear, on the mere records, that the court houfe in the town of *Wafhington* is within the county of *Wafhington*. I think this, from all circumftances, fuffi-

*Long's cafe.*
*Cro El.* 490.
*5 Co.* 120.

ciently implied, and I think the clerk fufficiently warranted, nay I think it his duty, in making out this record to a fuperior court, to infert, not only the names of the judges and jurors, but to annex to the name of the place, that it is in the county of *Wafhington*. His records are for this county only ; and all the proceedings which he records are in this county. Here then are full materials for making out an unexceptionable record to a fuperior court. If, from thefe materials, a formal record were returned to a fuperior court, that court would confirm it. And if the fuperior court would confirm a formal return of the materials before us, we muft confirm the proceedings, on fufficient materials, without form ; and, as we yet fit in the fame court, and the record is yet in our breaft, we may even fupply fome materials, which may feem wanting. We may furely add, if we think it neceffary, the name of any or each of the attending judges, and the name of the county, in which this court houfe and town is. Such a fupplement, to the materials before us, would leave no objections to the proceed-

ings on this indictment, but to the formal difpofition of them; and that, to us, is no objection. When we are required by a fuperior court, we will put them in form. The materials, without form, are fufficient for us.

It only now remains to examine whether thefe opinions be confiftent with eftablifhed rules; for, if they be, they are decifive of the prefent queftion.

It is true, that the ftatutes of jeofails extend not to criminal proceedings; but it is alfo true, that, before thofe ftatutes, there were amendments at common law, and that the amendments at common law were applicable to criminal, as well as civil, proceedings.

It is true, that the court cannot amend the body of an indictment; for it is the finding of the grand jury.— But it is alfo true, that the caption of an indictment is no part of the indictment, or finding of the jury, and no part of the defcription of the offence. What then is the caption of an indictment, as defcribed in thofe books, on whofe authority the exceptions are founded? It is left as a thing of courfe, to be drawn up by the clerk of the court, when occafion fhall require. It is the ftyle or preamble, or return that is made from an inferior court to a fuperior, from which a *certiorari* iffues to remove, or when the whole record is made up in form: for whereas the record of the indictment, as it ftands on the file, in the court wherein it is taken, is only thus,—" *The jurors of our Lord the King, upon their oaths, do prefent*," when this comes to be returned upon a *certiorari*, it is more full and explicit, viz.— " *Norfolk, at a general feffion of the peace, held at S, in the county aforefaid, &c. before A. B. &c. by the oath of E. F. G. &c. honeft and lawful men, &c.*"

An indictment taken before juftices of the peace, and removed into the court of King's Bench, was objected to, becaufe it did not appear, that the place, where it was taken, was within the divifion for which the juftices were appointed. The clerk of the peace was commanded, to bring in the record itfelf, to be viewed, and if, on a view of the record, a miftake appeared in the certificate of the caption, they would caufe it to be amended. The caption of an indictment from any place, being left as a thing of courfe to be drawn up by

*2 Hawk.* 348.
*2 Hale* 165.

*Thorney's cafe, Cro. Ja.* 276.

*2 Hawk.* 348.
*2 Hale* 168.

N 2

1793.

*Rex v. Vaws*
1 *Mod.* 24.

*Rex v. Mor-*
*gan*, 1 *L. Ray*
710.

the clerk of the court, when occafion fhall require, may, on motion, be amended by him, fo as to make it agree with the original record, at any time, during the term, in which it came in, but not in a fubfequent term; but in a fubfequent term, the clerk, who returned it, fhall be fined, for his informal return. A prefentment was quafhed, becaufe it did not ftate, before whom the feffions were holden; and juftice *Twifden* faid, the clerk of the peace ought to be fined, for returning fuch a prefentment. An indictment for a riot was removed into the court of King's Bench, and, on not guilty pleaded, was tried at the Affizes. On verdict for the king, among many exceptions taken and over-ruled, the one relied on was, that, in the caption of the indictment, it was not faid of the jurors, that they were fworn and charged. To this the counfel replied, there is a great difference between a record made for *Nifi Prius*, which is always made briefly, and an indictment removed, with intent to be quafhed. The words " *on oath*" fupply the omiffion of " *fworn and charged.*"— The whole court held it good.

From this ftatement I conclude, that the caption of an indictment is to be confidered not fo much as an original, as a formal tranfcript of other materials, in the records, or, during the term, in the breaft of the court, and, when occafion requires, made up in form, by the clerk, from the materials neceffarily before him. If, therefore, there be any defect in the caption of this indictment, we have fufficient materials to amend it; and, if fo, we cannot yield to the objection, and cannot, for any of the reafons urged, arreft judgment on this indictment.

Sentence of death was paffed on the prifoner. He afterwards broke jail, and efcaped, but was retaken. However, the governor pardoned him. And, I believe, he left this country.